UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WAYNE SPENCER and MACH 5
LEASING, INC.,

     Plaintiffs,

v.                                                    CASE NO.: 8:12-cv-387-T-23TGW

TACO BELL CORP., et al.,

     Defendants.

_____/

## ORDER

    Wayne Spencer and Mach 5 Leasing, Inc., sue (Doc. 7) Taco Bell Corporation (TBC) and Taco Bell Foundation, Inc. (TBF), and allege infringement of U.S. Patent No. D643,474, a patent issued on August 16, 2011.  TBC and TBF now move (Doc. 69) for summary judgment.

## BACKGROUND

    The '474 patent, entitled "Coin Drop Game," covers the design features of a one-player game.  To play the game, a user drops a coin into the top of a chamber shaped like a hexagonal prism.  The chamber sits on a pedestal shaped like a

hexagonal prism.  Controlled by a central, vertical shaft, ten pie-shaped "pedals"[1] are inside the chamber.  The design permits the user, as the coin falls, to turn the shaft in an attempt to catch the coin on a higher-level pedal and manipulate the pedal to achieve a controlled transfer of the coin to a lower-level pedal and, thence, to the winning of a prize.

The prosecution history of the '474 patent involves several patents and applications:

- The '474 patent issued on August 16, 2011, from U.S. Design Patent Application 29/373,021.

- Spencer filed the '021 application on February 18, 2011, as a continuation-in-part of U.S. Patent Application 12/316,419.

- Spencer filed the '419 application on December 12, 2008, as a continuation-in-part of U.S. Patent Application 10/746,414.

- Spencer filed the '414 application on December 24, 2003.

Before prosecuting the '414 application, Spencer filed a patent application for a similar coin game on October 10, 2000.  A patent, U.S. Patent 6,367,801, issued for the game on April 9, 2002.

Starting in 2006, Spencer placed on sale and in public use a coin game under the name "Mach 5" or "Mach 5 Canister."  The Mach 5 is the canister patented in the '474 patent, issued on August 16, 2011.

_____

[1] The parties occasionally label the "pedals" as "paddles"; the patents and applications label the "pedals" as "coin-receiving surfaces."  Although the parties might have chosen "pedals" mistakenly, actually meaning floral "petals," which the "pedals" resemble, to avoid further confusion, this order uses "pedals."

The '414 application and the '474 patent are somewhat similar, but no drawing from the '414 application appears in the '474 patent.  The '414 application drawings are below[2]:



_____

[2] The '414 application includes two figures that illustrate a sign designed for placement on the canister and that are not displayed in this order.



FIG 3

FIG 4



FIG 5

The '474-patent drawings are below:



FIG. 1          FIG. 2




FIG. 3          FIG. 4



FIG. 5                    FIG. 6

    The canisters depicted in the '414 application and the '474 patent have six

distinguishing features. First, the lid drawn in the '414 application has a flat surface,

but the lid drawn in the '474 patent has six raised triangles. Second, the lid in the

'414 application has a single slot on the side for use with a padlock. The '474-patent

lid has no slot on the side; instead, the lid has three lock wells. Third, the bottom of

the '474-patent canister, which is drawn separately, has a circular pad placed near

each of the six vertices of the pedestal. The '414 application includes no drawing of

the bottom of the canister. The '414 application includes a perpendicular view from

the side, and two pads on the bottom of the canister are visible in the drawing. But

each pad has an unidentifiable shape and is not necessarily placed at the vertices of

the pedestal. Also, if the bottom of the '414-application canister had six pads

arranged as the pads are arranged on the '474-patent canister, the perpendicular side

view would show four pads. But the '414 application's perpendicular side-view

drawing shows only two pads.  Fourth, the views from the top of each canister show a difference in the layout and the width of the pedals.  The drawing in the '474 patent shows that the pedals are wide enough, and properly arranged, to occupy, if viewed from above, nearly 360 degrees.  However, the '414 application shows pedals that are thinner and arranged differently.  The result is (1) that the pedals of the '414-application canister, if viewed from above, occupy substantially less than 360 degrees[3] and (2) that the top and middle pedal-levels of the '414-application canister have parallel axes, but the corresponding axes in the '474 patent are skewed.[4]  Fifth, the '414 application depicts a "base support plate" at the bottom of the chamber with "six outwardly extending fingers."  The '474-patent drawings depict the base plate poorly, but the drawings include enough detail for a viewer to see that the base plate has no fingers.  Sixth, the pedestal of the '414-application canister has squared edges, but the pedestal in the '474 patent has rounded edges.

On February 23, 2012, the plaintiffs sued TBC and TBF for infringement of the '474 patent and for enhanced damages for willful infringement.  The plaintiffs argue that TBC and TBF have infringed the '474 patent through the use of a similar canister.  TBC and TBF argue (1) that the '474 patent is invalid under the on-sale bar,

---

[3] In other words, a viewer looking directly down on the '414-application canister can easily see the bottom of the canister through the five layers of pedals.  However, a viewer looking directly down on the '474-patent canister has the viewer's vision almost entirely obstructed by the pedals.

[4] The axes of the '414-application canister and the '474-patent canister are dissimilar in other specifics, but a comparison of the top- and middle-level axes of each canister shows the most representative and visible difference.

(2) that the '474 patent is invalid because the canister's ornamental design is dictated by function, (3) that the accused canister does not infringe the '474 patent, and (4) that the plaintiffs cannot prove willful infringement.

## DISCUSSION

### 1. On-Sale Bar

If "described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States," a patent is invalid under the on-sale bar. 35 U.S.C. § 102(b). If a patent application's filing date otherwise invalidates the patent under Section 102(b), the filing date of a parent application becomes conditionally available. *SunTiger, Inc. v. Scientific Research Funding Grp.*, 189 F.3d 1327, 1334 (Fed. Cir. 1999).

Entitlement to a parent application's filing date presents a question of law. *In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013). To use a parent's effective filing date, a patent's parent application must include a description of the subject matter of the patent, and that written description must comply with Section 112. *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998). "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008). The

written description element of a valid patent requires that "the disclosure of the

application relied upon reasonably convey[] to those skilled in the art that the

inventor had possession of the claimed subject matter as of the filing date." *Owens*,

710 F.3d at 1366 (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351

(Fed. Cir. 2010) (en banc)).

   For a design patent, the sole disclosure method is a drawing. *Vas-Cath Inc. v.*

*Mahurkar*, 935 F.2d 1555, 1564 (Fed. Cir. 1991).  Thus, the written description

requirement for a design patent is applied against a drawing.  *Daniels*, 144 F.3d

at 1456.  Similarly, if a design patentee relies on a parent application to achieve an

earlier effective filing date, the written description requirement is applied by looking

to the parent's drawings (and the text describing the drawings), even if the parent

application is for a utility patent.  As the Federal Circuit, explains:

> [A] design . . . can be described only by illustrations showing
> what it looks like (though some added description in words
> may be useful to explain the illustrations).  As a practical
> matter, meeting the remaining requirements of § 112 is, in the
> case of an ornamental design, simply a question of whether the
> earlier application contains illustrations, whatever form they
> may take, depicting the ornamental design illustrated in the
> later application and claimed therein by the prescribed formal
> claim.

*Racing Strollers, Inc. v. TRI Indus., Inc.*, 878 F.2d 1418, 1420 (Fed. Cir. 1989); *accord*

*Owens*, 710 F.3d at 1366 ("[W]hen an issue of priority arises under § 120 in the

context of a design patent prosecution, one looks to the drawings of the earlier

application for disclosure of the subject matter claimed in the later application.);

*Daniels*, 144 F.3d at 1456 ("Thus[,] when an issue of priority arises under § 120, one

looks to the drawings of the earlier application for disclosure of the subject matter claimed in the later [design patent] application.").

The plaintiffs argue that, in addition to consideration of the drawings of the parent application, the written description test includes consideration of the claims of a parent utility application. For support, the plaintiffs identify an uncited portion of a report and recommendation for *E-Z Bowz, LLC v. Professional Product Research Company*, 2003 WL 22068473 (S.D.N.Y. Sept. 5, 2003), report and recommendation adopted, 2005 WL 535065 (S.D.N.Y. Mar. 8, 2005). However, to the extent *E-Z Bowz* purports to authorize consideration of the claims of a parent utility patent to expand a later design patent, *E-Z Bowz* stands athwart binding Federal Circuit authority. *See Owens*, 710 F.3d at 1366; *Daniels*, 144 F.3d at 1456; *Racing Strollers, Inc.*, 878 F.2d at 1420.

Arguing that application of the written description test includes consideration of the specification of the parent utility application, the plaintiffs quote *Utter v. Hiraga*, which says, "A specification may, within the meaning of 35 U.S.C. § 112 ¶ 1, contain a written description of a broadly claimed invention without describing all species that claim encompasses." 845 F.2d 993, 998 (Fed. Cir. 1988). However, the plaintiffs apply the precedent out of context; *Utter* involved a utility patent, not a design patent. Because of the difference between a design patent and a utility patent,

the principle is inapplicable in this design-patent context.[5]  *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings."); *see also Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1464 (Fed. Cir. 1997) ("A design patent contains no written description; *the drawings are the claims* to the patented subject matter." (emphasis added)); *Racing Strollers, Inc. v. TRI Indus., Inc.*, 878 F.2d 1418, 1420 (Fed. Cir. 1989) (explaining that the "best mode" requirement, which no longer exists, could not apply to design patents because a design has only one mode); *Ex*

---

[5] Although not cited by the plaintiffs, some support for considering the text of a parent application exists in *In re Salmon*, 705 F.2d 1579 (Fed. Cir. 1983), which decided whether a parent application for a square-seated stool sufficiently described a design for a circle-seated stool in a subsequent application.  The Federal Circuit said:

> The parent application disclosed only a stool with a square seat, not one with a round seat.  The parent application claimed "an original design for a Stool as shown."  The stool as shown in the drawings was depicted in three-dimensional sketches that showed a square seat.  Similarly, the *specification* in the application described figure 1 in the drawings as "a general perspective view of the front of a stool embodying our new design."
>
> Nothing in *the text of the application* or the attached drawings even intimated that the square shape of the seat was not an integral element of "our new design" for a stool.  Nothing in the application indicated that the design for which a patent was sought was anything less than the stool "as shown."  Neither *the text of the application* nor the drawings even suggested that the design consisted of only the tubular portion of the stool and not the seat.

*Salmon*, 705 F.2d at 1581 (emphasis added).  In light of the last sentence of the first quoted paragraph and other Federal Circuit precedent, the better interpretation of *Salmon* is that the text of the parent application may describe, but neither expand nor contradict, the drawings in the application. *See, e.g.*, *Racing Strollers, Inc. v. TRI Indus., Inc.*, 878 F.2d 1418, 1420 (Fed. Cir. 1989) ("[A] design . . . can be described only by illustrations showing what it looks like (though some added description in words may be useful to explain the illustrations).").

*Parte* Hanback, 231 USPQ 739, 741 (Bd. Pat. App. & Int'f 1986) ("[I]n design

applications, an amendment to the drawing is an amendment to the claim.").

TBC and TBF argue, and the plaintiffs have not disputed, that Spencer placed

the design of the '474 patent into public use, as the Mach 5, more than a year before

Spencer filed the '021 application.[6]  In response, the plaintiffs argue that the '474

patent is entitled to the filing date of the '414 application, a parent application of the

'474 patent.  TBC and TBF agree that the '414-application filing date would save the

'474 patent from the on-sale bar, but TBC and TBF argue (1) that the plaintiffs have

the burden of proving the '474 patent's entitlement to the earlier filing date and (2)

that the '474 patent is not entitled to the filing date of the '414 application.

The differences between the drawings of the '414 application and the '474

patent are fatal.  Ordinarily, a patent is presumed valid.  *PowerOasis, Inc. v. T-Mobile

USA, Inc.*, 522 F.3d 1299, 1303 (Fed. Cir. 2008).  But "[i]n the absence of an

interference or rejection which would require the [examiner] to make a determination

of priority," the burden shifts to the patentee to show the patent is entitled to the

earlier date.  *PowerOasis, Inc.*, 522 F.3d at 1305.

Not knowing of the Mach 5 during prosecution, the patent examiner had no

occasion to consider whether the '474 patent could benefit from the earlier filing date

---

[6] Spencer put the Mach 5 into public use as early as 2006, and he filed the '021 application in 2011.

of the '414 application.  Thus, the plaintiffs have the burden of demonstrating the right to the filing date of the '414 application.

The drawings of the '414 application and the drawings of the '474 patent depict a different canister, and the plaintiffs have not argued otherwise.  Instead, the plaintiffs argue that the claims and the specification of the '414 application "teach" each difference (or are, at least, not in conflict with any difference).  Each of the plaintiffs' arguments fails.

In addressing the six pads on the base of the '474-patent canister, the plaintiffs note that the '414 application specifies that "pads are secured to the lower face of the lower base as shown on the bottom of Figure 2."  (Doc. 74-1 at 11)  The plaintiffs' argument is misguided; the written description requirement looks to the drawings and consults the specification only to describe the drawing.  The specification in the '414 application cannot save the drawings because the drawings are inconsistent with the six-pad arrangement found in the '474 patent[7]: the perpendicular side-view drawing in the '414 application shows only two pads, but a similar view of the '474-patent canister would show four pads.[8]  Even if the specification could add to, or detract from, the drawings, the language in the '414 application – which says that

_____

[7] Also, the shape of the pads on the bottom of the '414-application canister is not drawn, but the '474 patent depicts circular pads.

[8] Figures 1 and 2 of the '474 patent are perpendicular side views of the canister.  The drawings have five pads, not four.  Given the layout of the pads in Figure 6, which is more detailed, the artist most likely carelessly drew too many pads in Figures 1 and 2.  However, even if the five-pad drawings are correct, the perpendicular side-view drawings of the '474 patent show more than two pads.

pads are secured to the base "as shown" in the drawings – contributes nothing to the drawings.

The plaintiffs acknowledge that the lid of the '474 patent has six raised triangles that are absent from the drawings of the '414-application lid. To reconcile the two lids, the plaintiffs look to the claims and the specification of the '414 application. Unable to find language that describes (or even allows for) a different lid, the plaintiffs argue that the '414 application has "no limitations as to the smoothness or raised areas on the upper surface of the lid." (Doc. 74 at 7) Again, the plaintiffs' argument fails for looking to the text of the application for more than a description of the drawings. But even accepting the plaintiffs' approach, the text of the application cannot save the drawings. After searching through the specification and claims, the plaintiffs find no text discussing six raised triangles. Instead, the plaintiffs argue that the top surface of the lid is not described in the specification. But the written description element requires more than a specification that is compatible with the claimed subject matter; the application must describe the subject matter. The written description requirement ensures that the inventor possessed the claimed subject matter, not that the inventor had not excluded the subject matter.[9] *In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013). Thus, the lack of a conflicting limitation is not sufficient to satisfy the written description requirement.

---

[9] The plaintiffs' view of the written description requirement would destroy the purpose of the requirement; the plaintiffs' view, if adopted, would reward vague patent applications – the more vague the language is, the less likely the language will conflict with the claimed invention.

The plaintiffs admit that the lid drawn in the '414 application is a "different variation" from the lid drawn in the '474 patent. (Doc. 74 at 6)  But the plaintiffs look to the specification for words that describe the '474-patent lid.  The '474-patent specification explains, "Next provided are security in [sic] components between the lid and the exterior housing.  The security components include adjacent holes in the lid and the exterior housing and a padlock for selectively locking and unlocking the lid onto the exterior housing to secure coins within the housings." (Doc. 74-1 at 6) Unlike other words from the specification that the plaintiffs have provided, these words help to describe the drawings in the '414 application.  But the drawings of the '414-application lid (even if viewed in light of the descriptive language in the specification) and the '474-patent lid remain distinguishable.  The lip of the '414-application lid has a slot, and the side of the chamber wall has a corresponding hole; the two fit together for use with a padlock.  However, the lid of the '474 patent uses a different locking mechanism – three locking wells that extend into the lid.

The plaintiffs have not disputed the differences between the pedals of the '414 application and the pedals of the '474 patent, i.e., the differently sized and differently aligned pedals.  Instead, the plaintiffs say that TBC and TBF are mistaken in "rel[ying] entirely on the drawings of the '414 patent application." (Doc. 74 at 8) "Nowhere in the specification [or] the claims," the plaintiffs say, "is there a limitation of a specific degree between the [pedals], or a specific alignment required." (Doc. 74 at 8)  Again, the plaintiffs' argument fails for relying on the text of the '414

application for more than a description of the drawings.  But even considering the specification and claims separately, the plaintiffs' argument fails for the same reason identified when considering the six raised triangles: the pedals in the '474 patent are not described in the specification of the '414 application.[10]  The plaintiffs argue that the alignment of the pedals is not described in the specification of the '414 application.  But the written description element requires more than a specification that is merely compatible with the claimed subject matter; the application must describe, that is, disclose, the subject matter.

The plaintiffs have not addressed the remaining two differences between the '414-application canister and the '474-patent canister because TBC and TBF failed to identify those differences.  The '414 application depicts a "base support plate" with "six outwardly extending fingers"; the '474-patent drawings depict no fingers.  The pedestal of the '414-application canister has squared edges; the pedestal of the '474-patent canister has rounded edges.  These two additional features of the canisters further distinguish the drawings.

In short, the drawings in the '414 application and the drawings in the '474 patent differ in six ways, and the plaintiffs' silence effectively concedes the differences.  The plaintiffs look beyond the drawings of the '414 application to the vague claims and the vague specification of the application and argue that the text

---

[10] As discussed above, when viewed from the top of the canister, the pedals of the '474 patent occupy nearly 360 degrees.

"teaches" (or is, at least, compatible with) each distinction.  The plaintiffs are mistaken to look to the claims and specification for more than a description of the drawings.  But even accepting the plaintiffs' approach, the written description remains insufficient: for each difference, the text of the '414 application either adds nothing to the drawings or further clarifies that the '414-application drawings are incompatible with the '474-patent drawings.

While not just "any change in the design defeats a priority claim as a matter of law," *Daniels*, 144 F.3d at 1457, TBC and TBF need not identify significant differences between the '414-application canister and the '474-patent canister.

*Daniels* – one of the few decisions in which a design patentee acquired a parent application's filing date – finds a sufficient written description in the parent application, despite only one minor difference in the drawings.  In the parent application, the patentee filed drawings of a "leecher," which is a trap used to catch leeches.  The leecher had a design of a leaf printed on the side.  In a later application, the patentee filed a design patent for a leecher and used the same drawings found in the parent application, except the new leecher had no leaf design.[11]  The Federal Circuit found for the patentee and noted, "[T]he later claimed subject matter is contained in the earlier application.  The leaf ornamentation in the parent application, superimposed upon the design of the leecher itself, does not obscure that

_____

[11] The Federal Circuit provided three pictures from each of the two applications.  *Daniels*, 144 F.3d at 1454-55.  Figures 5 and 6 of the applications are identical, and Figure 1 is the same except for the leaf design.

design, which is fully shown in the parent application drawings." *Daniels*, 144 F.3d at 1457.

In *Owens*, the patentee submitted an application for, and obtained, a design patent on a bottle. 710 F.3d 1362, 1363 (Fed. Cir. 2013). Later, the patentee submitted another design application for a portion of the same bottle and sought the benefit of the parent application's filing date. Claiming the design of the top portion of the same bottle found in the parent application, the patentee merely drew a line through the parent application's bottle drawing to distinguish and to identify only part of the bottle. The Federal Circuit explained that the patentee based his argument on a misunderstanding of *Daniels*. Even though the patentee in *Owens* claimed the top portion of the same bottle – exactly as depicted in the parent application – and even though the parent application clearly depicted that portion of the bottle, *Owens* denied the availability of the parent application's filing date because the parent application failed to distinguish and identify the later-claimed portion.

Review of *Daniels*, *Owens*, and other cases,[12] demonstrates that the four differences identified by TBC and TBF (as well as the two additional differences identified in this order) are sufficient to defeat the plaintiffs attempt to claim the benefit of the '414 application's filing date. The drawings of the '474-patent canister depict a distinct canister: (1) no drawing is shared between the '414 application and

---

[12] *E.g., In re Salmon*, 705 F.2d 1579 (Fed. Cir. 1983) (finding that a patent for a stool with a round seat could not use the filing date of a parent application for the same stool with a squared seat).

the '474 patent; (2) the '474 patent has new features not found in the '414 application (e.g., raised triangles, additional pads, and lock wells); and (3) the '474 patent has removed old features that are not distinguished in the '414 application (e.g., a padlock locking mechanism and a six-fingered base plate).

Because the '474 patent is not entitled to the filing date of the '414 application, the remaining analysis of the on-sale bar is not difficult.  TBC and TBF argue, and the plaintiffs have not disputed, that Spencer put the Mach 5 canister, which practices the design of the '474 patent, into public use more than a year before the application for the '474 patent.[13]  Lacking entitlement to an earlier filing date,[14] the '474 patent is invalid under the on-sale bar.

*2. Infringement*

Even assuming the '474 patent is valid, the plaintiff must prove that the TBC and TBF's canister infringes the '474 patent.  Patent infringement, a question of fact, requires proof by a preponderance of evidence.  *Braun, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 819 (Fed. Cir. 1992).  *Kustom Signals, Inc. v. Applied Concepts, Inc.*, commands summary judgment "when there is no genuine issue of material fact or when, drawing all factual inferences in favor of the nonmoving party, no

---

[13] Spencer put the Mach 5 canister on sale and in public use as early as 2006, and the critical date for the '474 patent is February 18, 2010.

[14] The earliest application filed after the '414 application is the '419 application.  Beginning in 2006, the public use and sale of the Mach 5 began more than a year before the December 12, 2008, filing date of the '419 application.

reasonable jury could return a verdict for the nonmoving party."  264 F.3d 1326,

1332 (Fed. Cir. 2001) (quotation marks omitted).  To prove infringement in a design

patent case, a patentee must show that "an ordinary observer, familiar with the prior

art, would be deceived into thinking that the accused design was the same as the

patented design."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed.

Cir. 2008).

 Pictures of the accused device are below:

 

 The defendants correctly identify seven distinctions between the '474-patent

canister and the accused canister:

  1. The bottom of the chamber of the accused canister is flat, but the
'474-patent canister has a dome-shaped base plate at the bottom
of the chamber.

2.      The accused canister has a flat lid, not a lid with six raised
        triangles.

3.      The accused canister's lid has no lock wells, but the lid on the
        '474-patent canister has three lock wells.

4.      The accused canister's lid rests inside the walls of the chamber,
        but the lid on the '474-patent canister fits over and around the
        walls of the chamber.

5.      The accused canister includes a pedestal that is wider than the
        chamber; the pedestal of the '474 patent is thinner than the
        chamber.

6.      The accused canister is supported by two opposing support rods,
        but the '474-patent canister has no support rods.

7.      The accused canister has squared edges, but the '474-patent
        canister has rounded edges.

No reasonable jury could find that the seven distinctions identified by the

defendants pass unnoticed by an ordinary observer.  Also, the defendants correctly

note that the differences between the accused canister and the '474-patent canister

become even more apparent to an ordinary observer who considers the prior art.  As

the Federal Circuit explained:

> When the differences between the claimed and accused designs
> are viewed in light of the prior art, the attention of the
> hypothetical ordinary observer may be drawn to those aspects
> of the claimed design that differ from the prior art.  If the
> claimed design is close to the prior art designs, small differences
> between the accused design and the claimed design assume
> more importance to the eye of the hypothetical ordinary
> observer.

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citations omitted); *accord Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) ("Where there are many examples of similar prior art designs . . . , differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.").

The '801-patent canister, patented in 2000, manifests many similarities to the '474-patent canister and to the accused canister.  Drawings of the '801-patent canister are below:





Like the '474-patent canister and the accused canister, the '801-patent canister (1) is a hexagonal prism, (2) sits on a hexagonal-prism pedestal, (3) has transparent chamber walls, (4) has a lid with three slots for the user to insert coins into the chamber, (5) has ten pie-shaped pedals, (6) has five levels of pedals, and (7) has a vertical shaft that controls the pedals.  Along with the accused canister, but not the '474-patent canister, the '801-patent canister (1) has squared edges, (2) has a lid that fits inside the walls of the canister, (3) has no locking wells on the lid, (4) has no dome-shaped base plate at the bottom of the canister, and (5) has a flat lid.

The '801-patent canister shows that the most immediately apparent similarities between the '474-patent canister and the accused canister (e.g., the hexagonal-prism-shaped chamber and pedestal and the ten pie-shaped pedals) would not draw the eye of the ordinary observer with knowledge of the prior art; these similarities exist in the

prior art, as well.[15]  Instead, the features of the '474-patent canister that would catch the eye of the ordinary observer, familiar with the prior art, are the features that distinguish the '474-patent canister from the prior art.  Those features are the same features that distinguish the '474-patent canister from the accused canister.[16]  Thus, no reasonable jury could find that an ordinary observer, familiar with the '801 patent, could not distinguish the '474-patent canister from the accused canister.[17]

─────────────────────

[15] The '474 patent lists eleven other prior art references.  (Doc. 68-2 at 2)  These eleven references further aid the ordinary observer in distinguishing the '474-patent canister and the accused canister.

[16] Some of the identified distinctions are particularly noticeable, as even Spencer has admitted.  For example, consider the dome-shaped base plate found in the '474-patent canister but not in the accused canister.  While prosecuting the '414 application, the examiner told Spencer that the canister in the '414 application shared too many similarities with the prior art.  In response, Spencer argued that his invention differed from the prior art, and Spencer identified as a distinguishing feature the "base support plate . . . [that has] 'an upper surface tapering downwardly from the central aperture.'"  (Doc. 68-21 at 7)  (In other words, Spencer identified a dome-shaped base plate at the bottom of the '414-application chamber and argued that the plate distinguished the '414-application canister from other canisters.)  Spencer went on to explain the importance of the dome-shaped base plate and said, "This configuration makes the coins more visible and the system more effective in attracting users."  (Doc. 68-21 at 7).  Like the '801-patent canister but unlike the '474-patent canister, the accused canister has no dome-shaped base plate at the bottom of the chamber.

[17] The differences identified by TBC and TBF are not disputed by the plaintiffs.  Instead, the plaintiffs argue (1) that the '801-patent canister is easily distinguished because the chamber is designed to hold water and (2) that infringement is a question of fact.

The distinctions between the '801-patent canister and the accused canister that are identified by the plaintiffs are minimally probative.  The point of considering the '801 patent is not to say that the '801-patent canister and the accused canister are indistinguishable.  The point of considering the '801-patent is that the two canisters share many design similarities and that those design similarities aid the ordinary observer in understanding that a third canister that shares those characteristics may still be a different design, despite the similarities.

If no reasonable jury could find for the plaintiffs, infringement is resolvable and subject to determination on summary judgment.  *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001).  No reasonable jury could find that an ordinary observer, especially an observer familiar with the prior art, could fail to distinguish the '474-patent canister from the accused canister.

**CONCLUSION**

The '474 patent is invalid under the on-sale bar of Section 102(b).  Even if the '474 patent is valid, the accused canister does not infringe the '474 patent.  Because the accused canister does not infringe the '474 patent, the plaintiffs' willful-infringement claim and induced-infringement claim require no further disposition. The defendants' motion (Doc. 69) for summary judgment is **GRANTED**.  The clerk is directed to enter judgment in favor of the plaintiff and against the defendants.  The defendants' motion (Doc. 44) to dismiss the plaintiff's second amended complaint is **DENIED AS MOOT**.

ORDERED in Tampa, Florida, on October 2, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE